LTG

FILED
IN CLERK'S OFFICE
U.S. ★ NOV 05 2015 ★ E.D.N.Y
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA

      -against-

MOHAMMAD HADI,
RIZWAN AHMED and
SALMAN SIDDIQUI,
    also known as "Sal,"

        DEFENDANTS.
- - - - - - - - - - - - - - - - - - - X
- - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF AN APPLICATION FOR
SEARCH WARRANTS FOR:

(1) THE PREMISES KNOWN AND DESCRIBED
AS RIZWAN AHMED, CPA P.C., 35 ABERDEEN
ROAD, NEW HYDE PARK, NEW YORK,
(SUBJECT PREMISES #1), AND

(2) THE PREMISES KNOWN AND DESCRIBED
AS SAL'S PHARMACY, 3259 HEMPSTEAD
TURNPIKE, LEVITTOWN, NEW YORK,
(SUBJECT PREMISES #2), AND

(3) THE PREMISES KNOWN AND DESCRIBED
AS HARRY'S PHARMACY, 333 SOUTH
BROADWAY, HICKSVILLE, NEW YORK,
(SUBJECT PREMISES #3).
- - - - - - - - - - - - - - - - - - - X
EASTERN DISTRICT OF NEW YORK, SS:

AFFIDAVIT IN SUPPORT
OF AN APPLICATION FOR
ARREST AND SEARCH
WARRANTS

(18 U.S.C. §§ 1347, 1349 and
21 U.S.C. § 846)

MJ 15-1058

        SEAN J. TUMULTY, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

In or about and between January 2012 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOHAMMAD HADI, RIZWAN AHMED and SALMAN SIDDIQUI, also known as "Sal," knowingly and willfully conspired to execute a scheme and artifice to defraud a health care benefit program, to wit; Medicare and private insurers.

(Title 18, U.S.C. §§ 1347 and 1349)

In February 2015, within the Eastern District of New York and elsewhere, the defendant MOHAMMAD HADI, together with others, did knowingly and intentionally conspire to distribute a controlled substance, which offense involved a substance containing oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Section 846)

Upon information and belief, there is probable cause to believe that there is located in (1) THE PREMISES KNOWN AND DESCRIBED AS RIZWAN AHMED, CPA P.C., 35 ABERDEEN ROAD, NEW HYDE PARK, NEW YORK, (SUBJECT PREMISES #1), AND (2) THE PREMISES KNOWN AND DESCRIBED AS SAL'S PHARMACY, 3259 HEMPSTEAD TURNPIKE, LEVITTOWN, NEW YORK, (SUBJECT PREMISES #2), AND (3) THE PREMISES KNOWN AND DESCRIBED AS HARRY'S PHARMACY, 333 SOUTH BROADWAY, HICKSVILLE, NEW YORK, (SUBJECT PREMISES #3), documents and other items as described more fully in Attachment B, which constitute evidence, fruits and instrumentalities of Health Care Fraud and Conspiracy to commit same occurring in the Eastern District of New York and elsewhere, in violation of Title 18 U.S.C. §§ 1347 and 1349.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI since July 2011. I am currently assigned to investigate white collar crime including fraud involving federal health care programs, which encompass schemes to defraud Medicare and private insurers. Through my training, education, and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activities to conceal their behavior from detection by law enforcement authorities.

2. I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, (c) information obtained from confidential sources of information, (d) interviews with witnesses and victims, and (e) review of records and reports of Medicare and private insurers.

I. <u>BACKGROUND</u>

3. The FBI is investigating two pharmacies; Sal's Pharmacy (SUBJECT PREMISES #2)[2] and Harry's Pharmacy (SUBJECT PREMISES #3) (collectively the "PHARMACIES"), and others including Hadi Medical Group ("HADI MEDICAL") and

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for search and arrest warrants, I have not set forth each and every fact learned during the course of the investigation.

[2] Sal's Pharmacy was previously known as Levenson's Pharmacy. The name changed in our about May 2015.

3

RIZWAN AHMED, CPA P.C. ("AHMED CPA"), for conspiring to perpetrate, and perpetrating, a long-standing scheme to defraud Medicare and private insurance companies, from January 2012 to the present. Under Title 18, United States Code, Section 1349, it is illegal to conspire to defraud Medicare or any private insurance companies, or, to obtain by means of false or fraudulent pretenses, representations, or promises, any of the money under the custody or control of Medicare or private insurance companies. In total, the PHARMACIES have received approximately $3 million in Medicare and private insurance reimbursements from 2012 to the present, some percentage of which was obtained via fraudulent representations. The PHARMACIES continue to be paid as of today's date.

II. PHARMACY AUDITS

    4. It is the regular practice of Medicare and private insurance company representatives to audit pharmacies. One of the purposes of an audit is to insure that pharmacies actually acquire the inventory they claim to dispense. To that end, pharmacies are required to maintain documentation regarding the acquisition of inventory, usually obtained from either wholesale medication distributors or other pharmacies. Similarly, pharmacies are required to maintain documentation of all prescriptions dispensed to the public. The audit generally consists of matching up acquisition invoices with dispensing documentation.

III. THE SCHEME TO DEFRAUD

    5. In March 2015, an individual hereinafter referred to as the cooperating witness (CW), whose identity is known to the FBI, provided information to the FBI about a

4

fraudulent scheme to defraud Medicare and private insurance companies.³ Specifically, the CW indicated that defendant MOHAMMAD HADI, a medical doctor working at HADI MEDICAL, and defendant SALMAN SIDDIQUI, also known as "Sal," a pharmacist at SAL'S PHARMACY (SUBJECT PREMISES #2), are engaging in a massive fraud scheme described as "B Scripting," assisted by defendant RIZWAN AHMED, a certified public accountant, operating his business, AHMED CPA, from SUBJECT PREMISES #1. According to the CW, some percentage of patients of HADI MEDICAL are seen by defendant HADI and issued controlled substances prescriptions, primarily oxycodone (the "A" Prescriptions). However, defendant HADI also issues the patients additional unnecessary prescriptions ("B" prescriptions), in some cases with, and in some cases without, the patient's knowledge,⁴ for the express purpose of permitting defendant SIDDIQUI and others working at the PHARMACIES to falsely bill Medicare and/or private insurance companies for the "B" prescriptions, when in fact the PHARMACIES have not dispensed the medication (and often time have not even acquired the medications). As part of the scheme to defraud, individuals working for HADI MEDICAL, including defendant HADI,

---

³ The CW was arrested earlier this year for distribution of oxycodone. The CW has intimate knowledge of the fraud scheme as s/he previously worked at SUBJECT PREMISES #2. I believe that the CW is credible as the information provided by the CW has been corroborated by other facts learned during the investigation.

⁴ In the case of a complicit patient, the patient is instructed to bring both the "A" prescription(s) and the "B" prescription(s) to the pharmacy, however only the "A" prescription(s) are filled and dispensed, while the defendant SIDDIQUI and/or the PHARMACIES bill for both. In the case of a non-complicit patient, the patient is instructed to bring the "A" prescriptions to defendant SIDDIQUI and/or the PHARMACIES, and separately, someone associated with defendant HADI and HADI MEDICAL forwards the "B" prescription(s) to defendant SIDDIQUI and/or the PHARMACIES, which bill for both the "A" and "B" prescriptions.

specifically steer patients to defendant SIDDIQUI and the PHARMACIES (SUBJECT PREMISES #2 and #3), which PHARMACIES fill and dispense the "A" prescriptions but not the majority of the "B" prescriptions. Thereafter, the PHARMACIES billed Medicare and private insurance companies for the "A" and "B" prescriptions and convert the reimbursement money to their own use.

      6.     Between June 2015 and October 2015, agents interviewed seven individuals who were issued prescriptions by defendant HADI and/or HADI MEDICAL, which prescriptions were all purportedly filled and dispensed by defendant SIDDIQUI from SUBJECT PREMISES #2 and/or a pharmacist at SUBJECT PREMISES #3. Five of the patients were actual patients of defendant HADI and/or HADI MEDICAL, and recalled being issued certain prescriptions (the "A" prescriptions) but denied knowledge of the other prescriptions issued in their names (the "B" prescriptions), for which defendant SIDDIQUI at SUBJECT PREMISES #2 or a pharmacist at SUBJECT PREMISES #3 were paid by Medicare and/or private insurance companies. The sixth and seventh individuals, who were not patients of defendant HADI or HADI medical, were unknowingly issued multiple "B" prescriptions by defendant HADI, which prescriptions were presented to defendant SIDDIQUI at SUBJECT PREMISES #2 or another pharmacist at SUBJECT PREMISES #2, and for which claims that medications were dispensed were thereafter made to and paid by private insurance companies. In total, the five patients, and two others, were issued 41 "B" prescriptions by HADI and/or HADI MEDCAL, prescriptions which defendant SIDDIQUI at SUBJECT PREMISES #2 or a pharmacist at SUBJECT PREMISES #3, falsely billed

Medicare and/or private insurance companies approximately $9,500, claims which were paid.[5]

7. As a further part of the scheme to defraud, and to avoid detection by an audit, the CW advised that defendants AHMED and SIDDIQUI, and other members of the PHARMACIES, created false invoices to document phony purchases of inventory from other pharmacies. The CW advised that on February 12, 2015, defendant AHMED emailed him/her fraudulent invoices to document the phony purchase of inventory. The CW produced the email and the attached invoices for inspection by law enforcement.

8. In July 2015, a search warrant was issued by the Honorable Gary R. Brown, United States Magistrate Judge, for the contents of the google email account controlled by defendant AHMED. The search revealed communications between defendants SIDDIQUI, HADI and AHMED which included, but was not limited to, the sending of false and fraudulent invoices by defendant AHMED to defendant SIDDIQUI, as discussed in paragraph 7, *supra*, the sending of emails between defendant's HADI and AHMED, detailing the "B" scripting scheme to defraud[6], and google chats between defendant AHMED and his wife in which they discuss utilizing her prescription pad to issue controlled substance prescriptions at their home (SUBJECT PREMISES #1).

9. The CW advised and that evidence of the scheme to defraud is located inside of SUBJECT PREMISES #1, #2 and #3. In connection with SUBJECT PREMISES

---

[5] Three of the claims for reimbursement for prescriptions were billed as dispensed at SUBJECT PREMISES #2 and five of the claims were billed as dispensed at SUBJECT PREMISES #2. One of the patients had a "B" script run through both SUBJECT PREMISES #2 and SUBJECT PREMISES #3.

[6] This email is annexed hereto as Attachment C.

7

#1, earlier today, agents confirmed that defendant AHMED has current internet access provided by Verizon Fios at SUBJECT PREMISES #1. I believe, based upon my training and experience, that because defendant AHMED runs his business from SUBJECT PREMISES, and because he has internet access at SUBJECT PREMISES #1, that evidence of his involvement in the scheme to defraud will be located inside of SUBJECT PREMISES #1, specifically, fraudulent invoices, prescriptions and other documents generated by defendant AHMED via computer, and other items more fully described in Attachment B. In connection with SUBJECT PREMISES #2 and #3, I am advised by representatives at Medicare and private insurance companies that the PHARMACIES are required to maintain acquisition record and dispensing records for seven years and make them readily available for inspection. Based upon my knowledge of the case and my training and experience, I believe that, located inside of SUBJECT PREMISES #2 and #3, will be fraudulent invoices, labels that were printed and not affixed to a prescription, signature logs, and other documents reflecting that prescriptions were processes and billed for but not filled, and other items more fully described in Attachment B.

IV.   THE ILLEGAL DISTRIBUTION OF OXYCODONE

10.   On or about January 20, 2015, defendant HADI issued a prescription for 180 oxycodone 30 mg pills to John Doe, an individual whose identity is known to the FBI. JD is a relative of the CW, and is not a patient of defendant HADI. The CW advised that defendant HADI issued the prescription in the name of JD, but that the prescription was really issued to the CW for the express purpose of selling the pills as defendant HADI knew the CW needed money and urged him to sell the pills to make money.

11. On April 21, 2015, agents interviewed defendant HADI in connection with the January 20, 2015 prescription issued to JD. Defendant HADI advised, in sum and substance, that he recalled his appointment with JD, recalled that JD was in pain and needed medication and recalled issuing JD a controlled substance prescription. However, JD is a citizen of Greece, and Department of State travel records indicate that JD was not in the United States on January 20, 2015.

V. SUBJECT PREMISES #1

12. SUBJECT PREMISES #1 is the residence of defendant RIZWAN AHMED, and a business office of RIZWAN AHMED, CPA P.C., located at 35 Aberdeen Road, New Hyde Park, New York. The CW advised that defendant AHMED is an integral part of the fraud scheme, described *supra*, and that defendant AHMED took action on behalf of the fraud scheme from an office located inside of SUBJECT PREMISES #1. For example, the CW described a meeting in early 2015 at which the CW and defendants AHMED, HADI and SIDDIQUI met and discussed the specifics of the fraud scheme. It was made clear to the CW during that conversation that that defendant AHMED did work for defendant HADI from inside of SUBJET PREMISES #1 using a computer. Agents verified that mail addressed to the SUBJECT PREMISES, including bank statements and other mail, were addresses to RIZWAN AHMED, CPA P.C. All web based searched for RIZWAN AHMED, CPA P.C. reveal SUBJECT PREMISES #1 address. Items to be seized are set forth more fully in ATTACHMENT "B."

VI. SUBJECT PREMISES #2 and #3

13. SUBJECT PREMISES #2 and #3 are SAL'S PHARMACY, 3259 HEMPSTEAD TURNPIKE, LEVITTOWN, NEW YORK, (SUBJECT PREMISES #2), and

9

HARRY'S PHARMACY, 333 SOUTH BROADWAY, HICKSVILLE, NEW YORK (SUBJECT PREMISES #3). The CW indicated that various false and fraudulent documents created in furtherance of the scheme to defraud as well as other relevant documents are located inside of the PHARMACIES. Items to be seized are set forth more fully in ATTACHMENT "B."

VII. CONCLUSION

14. WHEREFORE, your deponent respectfully requests that the requested search warrants be issued for: (1) THE PREMISES KNOWN AND DESCRIBED AS RIZWAN AHMED, CPA P.C., 35 ABERDEEN ROAD, NEW HYDE PARK, NEW YORK, (SUBJECT PREMISES #1) and (2) THE PREMISES KNOWN AND DESCRIBED AS SAL'S PHARMACY, 3259 HEMPSTEAD TURNPIKE, LEVITTOWN, NEW YORK, (SUBJECT PREMISES #2), and (3) THE PREMISES KNOWN AND DESCRIBED AS HARRY'S PHARMACY, 333 SOUTH BROADWAY, HICKSVILLE, NEW YORK, (SUBJECT PREMISES #3).

15. WHEREFORE, your deponent respectfully requests that arrest warrants be issued for the defendants MOHAMMAD HADI, RIZWAN AHMED and SALMAN SIDDIQUI, so that they may be dealt with according to law.

IT IS FURTHER REQUESTED that all papers submitted in support of this application, including these application and search warrants, be sealed until such time as the search warrants and arrest warrants are executed. Upon execution of all warrants, this document shall be automatically unsealed by operation of law.

                                                SEAN J. TUMULTY
                                              Special Agent
                                              Federal Bureau of Investigation

Sworn to before me this
5th day of November, 2015

THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT B

### PROPERTY TO BE SEIZED FROM SUBJECT PREMISES #1

1. All records [1] relating to Sal's Pharmacy (SUBJECT PREMISES #2) and Harry's Pharmacy (SUBJECT PREMISES #3) from January 2012 to the present.

2. Documents constituting, concerning or relating to any inventory of Sal's Pharmacy (SUBJECT PREMISES #2) and Harry's Pharmacy (SUBJECT PREMISES #3). Any patient files, bills, invoices, and claims for payment/reimbursement for services and items billed, provided, or alleged to have been provided to patients to include but not limited to reimbursement claim forms (HCFA/CMS 1500) in connection with Sal's Pharmacy (SUBJECT PREMISES #2) and Harry's Pharmacy (SUBJECT PREMISES #3).

### PROPERTY TO BE SEIZED FROM SUBJECT PREMISES #2 & #3

3. All records from January 2012 to the present:

   a. constituting, concerning or relating to Medicare beneficiary, Medicaid recipient, and medical insurance patient files, bills, invoices, and claims for payment/reimbursement for services and items billed, provided, or alleged to have been provided to patients to include but not limited to reimbursement claim forms (HCFA/CMS 1500), explanations of medical benefits, dispensing orders, prescriptions and detailed written orders, certificates of medical necessity, information from the treating physician concerning the patients' diagnosis, correspondence to and from billing companies, and any and all

---

[1] As used herein, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

documents related to patients signing for scripts, and any documents relating to any pharmacist or other pharmacy employee verifying controlled substance prescriptions with the prescribing physician; any and all used and unused DEA Form 222, as well as invoices used to purchase schedule III, IV and V substances.

      b.    constituting, concerning, or relating to effects to collect co-payments and/or deductibles for individuals that receive health care coverage from Medicare, Medicaid and private medical insurance;

    4.    Computers[2] or storage media[3] that contain or in which are stored records or information (hereinafter "COMPUTER") used as a means to commit violations of health care fraud since January 2012, including scanned prescriptions stored on the COMPUTER, patient dispensing records and any and all correspondence with Medicare and/or private insurance companies.[4]

---

[2] As used herein, the term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

[3] As used herein, the term "storage media" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMS, and other magnetic optical media.

[4] All information obtained from such computers or storage media will be maintained by the government for the purpose of authentication and any potential discovery obligations in any related prosecution. The information shall be reviewed by the government only for the purpose of identifying and seizing information that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1347 and 1349 and involving SUBJECT PREMISES #2 & #3.

# Re: contingency / phase out plan

**From:** Mohammed Hadi <
**To:** Rizwan Ahmed
**Subject:** Re: contingency / phase out plan
**Sent:** Tue, 17 Feb 2015 09:04:30 +0300

Sounds good

Sent from my iPhone

On Feb 17, 2015, at 7:49 AM, Rizwan Ahmed <                              > wrote:

> So I went to Harry's today and Kavitha bought up the whole Levinson issue again. She's very upset that Dennis went to Kothari and tried to pitch her the pharmacy and that Kothari feeds them a lot of business and they would be closing down Hicksville. So they are concerned, they feel threatened and they want to know if they should discontinue the relationship with us, etc...
>
> Anyway, obviously I was cornered and I had to think fast... So in light of our situation with Dennis and all that's been going on and keeping in mind what you told me about potentially partnering up with Harry... I saw our out and pitched it to Kavitha...
>
> What if we partner up with Harry's pharmacy in Hicksville? It's already an established pharmacy with all insurances, etc... We can also open up more locations with one near Plainview under Hicksville's corporation name, it would take us no where near the amount of time it took us to open a startup like Levinsons, we can also partner up in Long Beach since you're going to tear that place up now. I started bringing up these possibilities to Kavitha and the whole mood changed! She said we all have to sit down and talk as soon as you get back so she was very receptive to it and she left happy. We will take Sal with us and Harry will act as a partner, we will hire a white dude to be the store manager and I will help out on the administration and be CFO / proxy. Since we will be B-scripting on maintenance drugs and stuff Sal and I will be spending a lot of time together. We will INSTATNLY start making money and reaping the benefits and we would not have even put in a dime (Harry did that already).
>
> Here is what we do about Levinsons...
>
> We make our money and pay ourselves back, let's see what Dennis can bring as far as new business if it hits, it hits, but the simple economics is that unless you're going to do serious specialization there is no money to be made legitimately without b scripting the shit out of everyone. Even if our business is 75% A scripts / 25 % B scripts we will MAKE A LOT OF MONEY through Harry's deal and we don't have to worry about a drug addict getting us busted. Levinsons will be a bonus for us.
>
> I spoke about this to Sal and he's on board...
>
> What do you say? We start making money INSTANTLY, don't have to worry about paying back Dennis's cousins' mother's sister's husband's grandfather's blah blah blah to pay back a loan etc. etc... So we have two / three / four pharmacies going at the same time and Levinsons would be the least of our worries... we will let it die out after we've made some money out of it.
>
> --
>
> Rizwan Ahmed, CPA P.C.
>
> 35 Aberdeen Rd.
>
> New Hyde Park, NY 11040
>
> P:
>
> F:
>
> Email: